**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Caroline Booker, et al., | No. CV-09-00902-PHX-ROS |
| Plaintiffs, | **ORDER** |
| vs. | |
| State of Arizona, et al, | |
| Defendants. | |

Defendants the United States and the State of Arizona have filed separate motions to dismiss Plaintiffs' complaint. For the following reasons, the claims against the State of Arizona will be remanded to state court, and Plaintiffs will be given an opportunity to conduct discovery regarding the claims against the United States.

## BACKGROUND

On September 1, 2007, two young girls–C.R.H. and R.J.H.[1]–were riding an all-terrain vehicle in the Windy Point Recreation Area near Chloride, Arizona. (Doc. 1-4 at 31). Windy Point Recreation Area is managed by the United States Department of Interior and the Bureau of Land Management ("Bureau"). As the girls were riding along a road

---

[1] As the girls were aged ten and thirteen, the Court will refer to them only by their initials. Fed. R. Civ. P. 5.2.

1  maintained by the Bureau, the girls' vehicle left the road and fell into an open and abandoned

2  mineshaft.  R.J.H. was killed and C.R.H. suffered serious injuries.  The mineshaft is part of

3  a patented claim known as the Brighter Days Mine owned by private individuals.

4          Plaintiff Caroline Booker, on behalf of herself and her daughters C.R.H. and R.J.H.,

5  filed suit against the State of Arizona and the owners of the mine in Maricopa County

6  Superior Court.  Plaintiffs later filed an amended complaint, naming the Bureau as an

7  additional defendant.  According to the complaint, the State of Arizona knew of the Brighter

8  Days Mine and was aware that it was a relatively dangerous mine.  Despite this knowledge,

9  "[n]o warning signs, fencing, or protective safety measures . . . [were] installed at the

10  Brighter Days Mine."  (Doc. 1-4 at 33).  Moreover, there were no "signs or warnings

11  regarding abandoned mine hazards" nor any fencing or protective safety measures along the

12  Bureau-maintained road leading to the Brighter Days Mine.

13          On April 29, 2009, the Bureau removed the case to this Court. On December 23,

14  2009, the parties submitted a Proposed Case Management Plan.  (Doc. 11).  The State of

15  Arizona assisted in drafting that document.  On December 28, 2009, the State of Arizona

16  moved to dismiss all of Plaintiff's claims as barred by the Eleventh Amendment.  And on

17  January 7, 2010, the Bureau moved to dismiss all of Plaintiff's claims as barred by sovereign

18  immunity.

19                                    **ANALYSIS**

20      **I. Claims Against State of Arizona Must be Remanded**

21      The State of Arizona has moved to remand all claims against it on the basis that the

22  Eleventh Amendment prohibits Plaintiffs from proceeding against Arizona in this forum.[2]

23  Based on Plaintiff's claims, and the history of this case, all claims against Arizona must be

24  remanded.

25

26

27          [2] Arizona originally argued that all claims against it must be dismissed, (Doc. 14 at

28  2), but later conceded remand, not dismissal, is the appropriate remedy.  (Doc. 24 at 10).

1    "The Eleventh Amendment bars suits for money damages in federal court against a

2    state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dept. of*

3    *Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  This Amendment "plainly protects states

4    from being haled into federal courts *as defendants*." *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375

5    F.3d 831, 844-45 (9th Cir. 2004).  It is undisputed that Plaintiff pled claims for money

6    damages against Arizona.  Thus, this suit is barred unless Arizona has waived its Eleventh

7    Amendment immunity.

8    "The test employed to determine whether a state has waived immunity is a stringent

9    one." *In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002).  A state waives its immunity if

10   it "voluntarily invokes [federal] jurisdiction or . . . makes a clear declaration that it intends

11   to submit itself to [federal] jurisdiction." *Id.*  For example, a state was found to have waived

12   its immunity "by participating in extensive pre-trial activities and waiting until the first day

13   of trial" to raise the immunity issue. *Hill v. Blind Indus. and Servs. of Maryland*, 179 F.3d

14   754, 756 (9th Cir. 1999).  But a state was found not to have waived its immunity by

15   participating in the filing of a witness list and by filing a third-party complaint. *Aholelei v.*

16   *Dept. of Pub. Safety*, 488 F.3d 1144, 1147-49 (9th Cir. 2007).

17   With this law in mind, Plaintiff presents four arguments aimed at establishing waiver:

18   1) Arizona asserted a claim against the Bureau; 2) Arizona consented in the removal to

19   federal court; 3) Arizona waited eight months after removal to seek remand; and 4) Arizona

20   accepted federal funds.  None of these contentions are convincing.

21                         **A. Arizona Has Not Sued the Bureau**

22   Plaintiff's first argument in support of waiver is that Arizona filed a claim against the

23   Bureau.  Because a claim against the Bureau would have to be heard in federal court, filing

24   such a claim could be construed as voluntarily invoking federal jurisdiction. *Cal. ex rel.*

25   *Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 848 (9th Cir. 2004) ("[A] state that voluntarily brings

26   suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant

27   seeks removal to a federal court of competent jurisdiction.").  Thus, if Arizona had sued the

28   Bureau in state court, Arizona could not now claim the Eleventh Amendment bars this Court

1  from hearing the case. But Arizona *has not* asserted a claim against the Bureau. (Doc. 24

2  at 4 "At no time did the State make a claim against or sue the [Bureau]; the State has not and

3  will not file a cross claim against the United States . . . ."). While Arizona did name the

4  Bureau as a non-party at fault, such action does not constitute asserting a claim against the

5  Bureau.[3]  Arizona's assertion that the Bureau is a non-party at fault does not support a

6  finding of waiver.

7  ### B. Arizona Did Not Consent to Removal

8  Plaintiff's second argument is that Arizona must have consented to the removal from

9  state court. Generally, removal requires the consent of all parties. *Durham v. Lockheed*

10 *Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006). But 28 U.S.C. § 1442 allows a federal

11 officer or agency to remove a case from state court "without other defendants joining in the

12 petition." *Ely Valley Mines, Inc. v. Hartford Acc. and Indem. Co.*, 644 F.2d 1310, 1315 (9th

13 Cir. 1981). Arizona's consent was not required prior to removal, and the record contains no

14 indication Arizona actually gave such consent. Thus, the removal does not support a finding

15 of waiver.

16 ### C. Arizona's Delay in Raising Immunity Does Not Constitute Waiver

17 Plaintiff's next argument is that Arizona waited too long to raise immunity as a

18 defense. This case was removed from state court on April 29, 2009, and Arizona did not

19 raise the issue of immunity until December 29, 2009. While the delay is puzzling, the only

20 substantive action Arizona took between April and December was participating in the

21 drafting of the proposed case management plan. The cases finding waiver based on pretrial

22 activity have depended on the State engaging in *extensive* pretrial activity. *See, e.g.*, *Hill*,

23 179 F.3d at 756 (state waited until first day of trial to raise immunity). Participating in the

24 drafting of a case management plan is not sufficient activity to establish waiver.

25

26     [3] Even if Arizona had asserted a cross-claim against the Bureau, it is not entirely clear
27 that such action would constitute a waiver of its Eleventh Amendment claim. *Cf. Aholelei
   v. Dept. of Pub. Safety*, 488 F.3d 1144, 1148 (9th Cir. 2007) (state's filing of third-party
28 complaint in federal court did not constitute waiver of Eleventh Amendment).

## D.  Arizona's Acceptance of Federal Funds Does Not Constitute Waiver

Finally, Plaintiff argues Arizona "accepted federal funds to inventory and remediate abandoned mines." (Doc. 20 at 6).  According to Plaintiff, Arizona's acceptance of these funds waived immunity.  But even assuming Arizona accepted federal funds, there is no evidence that such acceptance required a waiver of immunity.

A state may waive its Eleventh Amendment immunity by accepting "federal funds where the funding statute manifests a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." *Clark v. State of Cal.*, 123 F.3d 1267, 1271 (9th Cir. 1997).  For example, one federal statute provides "[a] State shall not be immune under the Eleventh Amendment" once a state accepts federal funds for that particular program.  42 U.S.C. § 2000d-7.  If Plaintiff were able to show Arizona accepted federal funds from a program containing such a waiver, the case could proceed in federal court.

Plaintiff does not, however, cite to *any* statute showing an intent to require Arizona waive its immunity in this context.  Instead, Plaintiff cites to "Assistance Agreements" between the Bureau and the Arizona State Mine Inspector.[4]  The statutory basis for these agreements was the Federal Land Policy and Management Act of 1976.  (Doc. 20-1).  That statute contains no mention of the Eleventh Amendment, let alone the "unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246 (1985).  Plaintiff has not established that Arizona's acceptance of federal funds waived the state's immunity.

Having found no basis for a waiver of Arizona's immunity, Plaintiff's claims against Arizona must be remanded to state court.

---

[4] In these agreements, the Bureau agreed to provide funding "to locate, classify and secure hazards associated with [inactive/abandoned mine sites]."  (Doc. 20-1 at 4).

## II. Discovery Regarding Discretionary Function Immunity

The United States seeks dismissal of Plaintiff's claims on the basis that they are barred by sovereign immunity. Plaintiff asks the Court to stay consideration of this motion until Plaintiff has been allowed discovery on the United States' policies and procedures regarding the Brighter Days Mine. Plaintiff will be granted sixty days in which to conduct discovery.

The United States' motion to dismiss depends upon the "discretionary function exception" to the Federal Tort Claims Act. This exception prevents liability for "[a]ny claim based . . . upon the exercise of performance of the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose tort liability on the United States and the desire to protect certain decision-making from judicial second guessing." *Conrad v. United States*, 447 F.3d 760, 764 (9th Cir. 2006).

There are two steps to application of this exception. "First, the question is whether the action taken by the government is a matter of judgment." *Id.* If the government is faced with a "mandatory directive," the exception does not apply. *Id.* Second, "the question is whether the discretion is the type of decision-making that the discretionary function exception was designed to protect." *Id.* Decisions "grounded in social, economic, and political policy" are protected. *Id.*

Application of the exception requires "a policy-specific and fact-driven inquiry." *Terbush v. United States*, 516 F.3d 1125, 1136 (9th Cir. 2008). The Supreme Court has instructed that actual evidence of policy weighing is not required. *United States v. Gaubert*, 499 U.S. 315, 324-25 (1991) ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."). But the Ninth Circuit

1  sometimes follows this ruling,[5] and sometimes does not.[6]  Based on the conflict in the case

2  law, Plaintiff will be given an opportunity to conduct discovery.  That discovery should focus

3  on establishing a mandatory policy which the Bureau failed to follow or on establishing that

4  the Bureau's failure to erect warnings or a barrier is not "susceptible to policy analysis."

5  *Gaubert*, 499 U.S. at 325.  Plaintiff will be instructed to file a supplemental opposition to the

6  motion to dismiss after completing discovery.

7       Accordingly,

8       **IT IS ORDERED** the Motion to Dismiss (Doc. 14) is **GRANTED IN PART AND**

9  **DENIED IN PART**.  All claims against the State of Arizona are **REMANDED TO STATE**

10 **COURT**.

11      **IT IS FURTHER ORDERED** the Motion to Stay (Doc. 21) is **GRANTED**.  Plaintiff

12 shall file a supplemental opposition to the motion to dismiss no later than July 6, 2010.  The

13 United States reply shall be filed no later than July 20, 2010.

14      DATED this 5th day of May, 2010.

15

16

17  _____
                    Roslyn O. Silver
18                  United States District Judge

19

20

21      [5] In *Childers v. United States*, 40 F.3d 973, 974 n.1 (9th Cir. 1994), the court observed
22  the discretionary function exception "does not depend . . . on whether federal official actually
    took policy considerations into account.  All that is required is that the applicable statute or
23  regulation gave the government agent discretion to take policy goals into account."  And in
24  *Terbush*, the court stated "[o]f course, after *Gaubert* we do not need actual evidence that
    policy-weighing was undertaken."  516 F.3d at 1137.

25
      [6] In *Oberson v. United States Department of Agriculture*, 514 F.3d 989, 998 (9th Cir.
26  2008), the court found the exception did not apply based on the "absence of any evidence"
    showing a "policy choice."  And in *Soldano v. United States*, 453 F.3d 1140, 1150 n.7 (9th
27  Cir. 2006), the court stated the government could not rely on "hypothetical justifications
28  indicative of a social, economic and political judgment."